IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| SHERI M. SURA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-6225-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL ASTRUE, COMMISSIONER of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Richard F. McGinty
McGinty & Belcher, PC
P.O. Box 12806
Salem , Oregon   97309

      Attorney for Plaintiff

Kent S. Robinson
Acting United States Attorney
Adrian L. Brown
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland , Oregon   97204

Page 1 - OPINION AND ORDER

David J. Burdett
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle , Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Sheri Sura brings this action pursuant to section 405(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB").  I reverse and remand the decision for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Sura had severe impairments of degenerative disc disease with chronic pain syndrome in the back, and depressive disorder. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After reviewing the medical record, the ALJ concluded that Plaintiff could perform sedentary exertional work with lifting less than 10 pounds both frequently and occasionally;

could sit for up to an hour at a time, and for 8 hours cumulatively, with breaks to stand occasionally; could stand and walk for up to 6 hours cumulatively; and required a sit, stand, and walk option. The ALJ included no mental limitations is his assessment. The ALJ found that Plaintiff could not perform her past relevant work, but had the residual functional capacity ("RFC") to work in electrical products assembly, small products assembly, and surveillance systems monitoring, and was not disabled under the Act.

## FACTS

Sura, who was 42 years old at the time of the ALJ's decision, claims that she has been disabled since November 15, 1999 due to degenerative disc disease with chronic non-malignant pain syndrome in the back, chronic left leg pain, blurred vision and impaired functioning due to pain medication, psoriasis, and depression. Plaintiff completed high school and has worked as a certified nursing assistant, certified medication aide, production laborer for mobile homes, quality control printer technician, housekeeper, and convenience store cashier.

In a fall off of a loading dock in 1998, Plaintiff injured her lower back and left leg. In July of 1999, Plaintiff saw a physician and complained of lower back and left leg pain. Magnetic resonance imaging ("MRI") revealed a central disc herniation. Doctors later determined the herniation was the likely cause of the pain. In June 2001, Plaintiff underwent surgery for the herniated disc. By February 2002, Sura's pain had been reduced "from 10 to 5," and she was able to manage it by taking painkillers. Tr. 315. By February of 2004, however, Sura reported back pain increasing over the preceding year. She also reported new pain extended to her left foot.

Sura has been on medication for depression all of her teen and adult life. Her treating doctor "suspect[ed] the pain and depression might effect her concentration to some degree." Tr.

Page 5 - OPINION AND ORDER

423. State psychologists who reviewed Sura's file, however, concluded, "[t]here is nothing about her behavior that would interfere with her ability to work." Tr. 308.

Sura has taken a number of medications over the years to treat her pain, depression, and various other conditions. The medications include: Vicodin, Oxycontin, Elavil, Paxil, Prozac, Endocet, Acyclovir, morphine, and methadone among many others. Sura alleges that one side effect of her medications is blurred vision. In February 2003, an optometrist, Dr. Leong, documented that Sura "has had blur since she started the morphine a [year] ago." Tr. 322. At a visit with a psychologist in January 2006, Sura was able to read an office form using eyeglasses but commented that her "vision is intermittently blurry due to side effects of medicine." Tr. 853.

Sura has also had some fatigue issues with regard to her pain medications. In October 2002, Sura's mother-in-law called the doctor to report Sura was falling asleep in strange places and commented that she was "probably addicted to narcotics." Tr. 361. Within one month Sura's family and her doctor confronted Sura about the addiction issue and Sura embarked on a new pain management program. Sura experienced unpleasant withdrawal symptoms in the interim period, and decided she "want[ed] off all meds and threw her meds away." Tr. 346. After quitting morphine cold, and beginning treatment with methadone, however, Sura continued to experience fatigue.

In October 1999, Sura was 5'1" and weighed 145 pounds and by July 2007, she weighed 208 pounds. In June 2001, Sura reported that her only consistent exercise was the less-than-one block walk to the mailbox she made each day. Although doctors repeatedly recommended that Sura begin some form of aerobic activity, Sura did not do so. Sura was also reluctant to work with a physical therapist. Nevertheless, Sura was still able to walk in January 2006, albeit with a

cane. She commented during that period, "I'm slow, but I get there." Tr. 853.

Despite Sura's conditions, medical records and hearing testimony indicate she engaged in a number of activities for herself and her family. She groomed herself and prepared her own meals. She was able to care for her son, who has ADHD, and got him ready for school in the morning. Sura drove infrequently to go grocery shopping and attend medical appointments. With assistance, Sura did some household chores on a weekly basis. She played cards, sewed, took care of her pet, and although she could not watch TV due to her vision, she listened to television programs. Sura got along well with her family and friends, and enjoyed spending time with her step-grandchildren.

## DISCUSSION

I.  Nonexamining Physician Testimony

The central issue on appeal is whether the ALJ failed to provide legally sufficient reasons for rejecting the testimony of Dr. McDevitt, a nonexamining medical advisor who reviewed Sura's medical records. Specifically, Sura argues that the ALJ failed to credit Dr. McDevitt's testimony that she suffers from chronic non-malignant pain syndrome and debilitating side effects from her medication regimen.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart,

Page 7 - OPINION AND ORDER

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  <u>Orn</u>, 495 F.3d at 632; <u>Widmark</u>, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  <u>Widmark</u>, 454 F.3d at 1066 n.2.  Opinions of a nonexamining, testifying medical advisor, however, may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).  The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error."  <u>Id.</u> at 599.  Conversely, where substantial evidence supports an award of benefits, and an ALJ rejects such evidence but fails to provide legally sufficient reasons for doing so, the court may remand for a finding of disability.  <u>See</u> <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that an ALJ's failure to provide legally sufficient reasons to reject evidence is one prong of a three-pronged test that, if satisfied, gives the court discretion to remand for a finding of disability).

      A.     <u>Chronic Non-Malignant Pain Syndrome</u>

Here, Sura argues that the ALJ gave insufficient weight to portions of Dr. McDevitt's testimony about her chronic non-malignant pain syndrome.  The ALJ, however, did not reject Dr. McDevitt's testimony that Sura suffers from chronic non-malignant pain syndrome.  The ALJ wrote that she "finds the claimant's degenerative disc disease of the lumbar spine is severe with chronic pain syndrome."  Tr. 472.  The ALJ also found that Sura's "back pain and radiculopathy is a severe impairment."  Tr. 470.  Nevertheless, chronic non-malignant pain syndrome, on its

own, is not *per se* disabling.  See e.g. Crider v. Highmark Life Ins. Co., 458 F. Supp.2d 487, 499 (W.D. Mich. 2006) (where doctor reported that plaintiff had "chronic non-malignant pain syndrome, which could be treated with opioid therapy" and "[h]e determined that plaintiff was nevertheless capable of sustaining work activity at the light duty level").

In this case, the ALJ did take Sura's chronic non-malignant pain syndrome into account in formulating her RFC.  For this reason, the argument that the ALJ did not credit Dr. McDevitt's testimony about Sura's back condition is without merit.

      B.        Side Effects of Medications

Sura also argues that the ALJ erred by improperly rejecting Dr. McDevitt's testimony about the side effects of her medication, namely, fatigue, impaired mental functioning, and blurred vision.

             1.        Fatigue and Impaired Mental Functioning

Dr. McDevitt testified that Sura's medication would impair her senses, and that "[c]onsidering how much medication she's taking, she is functional, but I doubt if one could function on a daily basis with this much medication on board."  Tr. 1005.  Dr. McDevitt also testified that 40 milligrams of methadone per day, "in combination with the amitriptyline, Klonopin, and methacarbonyl, would certainly be a fairly heavy dose of medication . . . on a regular basis and would interfere with at least persistence and pace in any kind of activity I would think."  Tr. 1006.  He testified Sura could not do even routine, repetitive tasks "with any degree of pace."  Tr. 1006.  Dr. McDevitt testified that Sura's use of medications alone "might equal the listing of 12.09 . . . which would be a substance addiction disorder," Tr. 1009, but that even if she "may not meet or equal [under 12.09] . . . the amount of medication on board would be a

Page 9 - OPINION AND ORDER

significant . . . interfering [*sic*] in her activity." Tr. 1010.

      Dr. McDevitt's opinion about Sura's fatigue and impaired functioning is supported by the record.  In 2002, family members reported that Sura was found "sitting asleep on the toilet the other night, had a lit cigarette which had fallen from her hand."  Tr. 361.  The same medical report indicated that on a cold, October night Sura had fallen asleep outside, wearing only pajamas, while letting the dog out.  Even after switching from morphine to methadone, Sura testified that "the fatigue is part in parcel . . . [with depression] [a]nd the medications."  Tr. 49.  She also testified the medication affected her short-term memory and that in order to remember anything, she had to "continuously . . . write notes to [her]self."  Tr. 55.

      The ALJ's opinion addresses Dr. McDevitt's testimony about the side effects of the medication solely in terms of addiction.  After discussing Sura's history of narcotic pain medication and her withdrawal from morphine in 2002, the ALJ wrote, "[t]he undersigned finds no conclusive signs or findings of drug seeking behavior."  Tr. 473.  The ALJ's opinion then turns to a discussion of Sura's engagement with Kaiser Addiction Services, Dr. McDevitt's testimony that the medication regimen may not meet or equal listing 12.09, and a mischaracterization of Dr. McDevitt's testimony about treating chronic non-malignant pain with non-narcotics analgesics.  The ALJ concluded, "[b]ased on the above facts, the undersigned does not concur with Dr. McDevitt's opinion that 'in 2005' her 'variety of medication would impair her sensorium' and he 'doubted she could function on a daily basis' based on his perceived amounts of medication she takes."  Tr. 473.  No other section of the ALJ's opinion discusses Dr. McDevitt's testimony about the impairments caused by Sura's medication regimen.  Nor does the opinion recognize that the impairments caused by medication must be considered even if Sura is

not an addict under listing 12.09. The ALJ failed to provide legally sufficient reasons for failing to adopt Dr. McDevitt's opinion on the medication's effect on Sura's fatigue and impaired mental functioning.

### 2. Blurred Vision

Sura alleges that the ALJ also improperly rejected Dr. McDevitt's testimony that another side effect of the medication was blurred vision. Dr. McDevitt testified that "40 milligrams of methadone a day . . . in combination with the amitriptyline, Klonopin, and methacarbonyl, would certainly be a fairly heavy dose of medication . . .[and] would also cause her this vision at times . . . I think chronically." Tr. 1005.

Dr. McDevitt's testimony is corroborated in the record by a treating physician, Dr. Leong. On January 16, 2003, Dr. Leong, an optometrist who treated Sura, noted "she has had blur since she started the morphine a [year] ago, [and subsequently] changed to methadone." Tr. 322. Dr. Leong diagnosed Sura with a "refractive disorder" and gave her a prescription for bifocals. Tr. 322. Sura testified at her first hearing that Dr. Leong told her "there are six muscles in my eyes and [the medication] causes the muscles to relax causing them to go out of focus." Tr. 44. She explained that she can focus on things for a moment, and then the muscles relax and her vision goes out of focus and related that "when I do wear glasses it does not make a difference." Tr. 45.

Despite the treating physician's corroboration of Dr. McDevitt's testimony, the ALJ rejected it. In her opinion, the ALJ wrote:

> At the hearing the claimant alleged one of her medication side-effects was blurry vision, however *that claim is not corroborated anywhere in the record*. Numerous records from Dr. Mark Olson and consultative examiners, including Dr. Kallemeyn, all reflect fully functional eyesight with glasses only needed for reading. Accordingly, the undersigned finds the claimant's alleged visual functioning

Page 11 - OPINION AND ORDER

> difficulties and side-effect from medication on her eyesight are not consistent with or supported by the medical evidence of record.

Tr. 471 (Emphasis added). In overlooking the record of Dr. Leong, the ALJ failed to recognize that the record *does* corroborate Dr. McDevitt's testimony and Sura's claim of blurry vision related to her medication. In addition, no records from Dr. Olson or Dr. Kallemeyn, a psychologist, contain medical diagnoses or professional opinions about Sura's vision. The ALJ failed to provide legally sufficient reasons for failing to adopt Dr. McDevitt's opinion on the effects of Sura's medications on her vision.

II.     Remedy

The court has the discretion to remand a case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

In addition, a remand for a benefits award is appropriate "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001). Such a remand for benefits is indicated particularly where a claimant has already experienced lengthy, burdensome litigation. Id. If the

Page 12 - OPINION AND ORDER

court were to allow the Commissioner to decide the issue again, it would create an unfair "heads we win; tails, let's play again" system of disability benefits adjudication. <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

In the instant case, Dr. McDevitt's testimony regarding Sura's blurred vision and impaired functioning and fatigue, as a result of her medications, is supported by the record and constitutes substantial evidence. I hold the ALJ failed to provide legally sufficient reasons for rejecting this substantial evidence. In addition, the lengthy record leaves no issues to be resolved before a determination of disability can be made. Finally, it is clear from the record that if the ALJ had credited Dr. McDevitt's testimony, she would have been required to find Sura disabled.

Sura's disability commenced almost a decade ago, and her application for social security benefits has been pending nearly as long. Her case has been heard twice by different ALJs, and has already been remanded once by a United States District Court. It is time for a resolution.

## CONCLUSION

Based on the record, the decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____15th_____ day of October, 2009.

                                                                              /s/ Garr M. King
                                                                              Garr M. King
                                                                              United States District Judge